UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

PERCY S. COBBINS,

                Plaintiff,

     V.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**REPORT AND RECOMMENDATION**

09-CV-1305
(FJS/VEB)

## I. INTRODUCTION

In July of 2006, Plaintiff Percy S. Cobbins filed an application for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since October of 2005 due to physical impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through his attorney, Peter M. Margolius, Esq., commenced this action on November 23, 2009, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 11).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on July 3, 2006, alleging disability beginning on October 9, 2005. The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on May 8, 2009, in Albany, New York, before ALJ Terence Farrell.  Plaintiff appeared with a non-attorney representative and testified.  Testimony was also received from Julie Andrews, a vocational expert. (T at 15, 401-36).[1]

On May 29, 2009, ALJ Farrell issued a written decision denying Plaintiff's applications. (T at 15-23).  The ALJ's decision became the Commissioner's final decision on September 30, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 3-5).

Plaintiff, through counsel, timely commenced this action on November 23, 2009. (Docket No. 1).  The Commissioner interposed an Answer on March 8, 2010. (Docket No. 8).  Plaintiff filed a supporting Brief on March 22, 2010. (Docket No. 9).  The Commissioner filed a Brief in opposition on March 29, 2010. (Docket No. 10).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's

---

[1] Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

2

motion be granted, Plaintiff's motion be denied, and this case be dismissed.

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

    **1.     Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2006.  He determined that Plaintiff had not engaged in substantial gainful activity since October 9, 2005, the alleged onset date.  The ALJ concluded that Plaintiff had the following impairment, which he considered "severe" as defined under the Act: musculoskeletal low back pain. (T at 17).

However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 19).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work, as defined in 20 C.F.R. § 416.967 (b), subject to the following: Plaintiff can lift/carry/push/pull 10 pounds; stand for 5 hours in an 8-hour workday (but no more than 1

hour at a time); walk for 5 hours in an 8-hour workday (but not more than 1 hour at a time); sit for 5 hours in an 8-hour workday (but not more than 1 hour at a time); occasionally climb and stoop; and frequently kneel, crouch, and crawl. (T at 19).

The ALJ found that Plaintiff could not perform his past relevant work as a fast food worker, short order cook, material handler, or child monitor. However, considering Plaintiff's age (26 as of the alleged onset date), education (high school), work experience, and residual functional capacity and based upon the testimony of the vocational expert, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 22).

Accordingly, the ALJ concluded that Plaintiff had not been under a disability between October 9, 2005, the alleged onset date, and May 29, 2009, the date of the ALJ's decision. (T at 23). As noted above, the ALJ's decision became the Commissioner's final decision on September 30, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 3-5).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. He offers three (3) principal arguments in support of that position. First, Plaintiff argues that the ALJ should have considered fibromyalgia as a severe impairment when assessing Plaintiff's limitations. Second, Plaintiff contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence. Third, Plaintiff asserts that the ALJ's questioning of the vocational expert was flawed. This Court will address each argument in turn.

### a.    Severity of Impairment

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In this case, the ALJ concluded that Plaintiff had a single severe impairment - musculoskeletal low back pain. (T at 17).  The ALJ made no mention of, or finding with

respect to, fibromyalgia. (T at 17). Plaintiff contends that this constituted a reversible error, pointing to the following evidence: A February 2009 treatment note from Plaintiff's treating nurse practitioner, indicating a diagnosis of fibromyalgia (T at 376-77); A February 2009 notation by Dr. Andrejuk, a pain management specialist, that Plaintiff suffered from fibromyalgia; and a reference by Plaintiff's non-attorney representative to the fibromyalgia diagnosis during the administrative hearing. (T at 404). Plaintiff argues that this evidence established a severe impairment and that the ALJ erred by failing to consider that impairment when assessing Plaintiff's limitations.

This Court finds Plaintiff's argument unpersuasive. First, as noted above, the mere diagnosis of an impairment is not sufficient to establish "severity" under step two. Plaintiff does not point to any assessment by a medical provider of limitations arising from fibromyalgia.

Second, the fact that the ALJ did not discuss the fibromyalgia diagnosis does not, without more, provide a basis for remand. The ALJ is not required to discuss each piece of evidence considered, particularly where, as here, the Plaintiff failed to provide an assessment by a medical provider of limitations caused by firomyalgia. Barringer v. Comm'r, 358 F.Supp.2d 67, 78-79 (N.D.N.Y. 2005) (noting that an ALJ's failure to cite specific evidence does not mean it was not considered) (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)).

Third, because the ALJ concluded that Plaintiff had a severe impairment (*i.e.* musculoskeletal low back pain) and continued with the sequential analysis, any arguable inadequacy in connection with the fibromyalgia diagnosis was harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary

found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

### b. Residual Functional Capacity

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20

C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

As noted above, the ALJ concluded that Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. § 416.967 (b), subject to the following: Plaintiff can lift/carry/push/pull 10 pounds; stand for 5 hours in an 8-hour workday (but no more than 1 hour at a time); walk for 5 hours in an 8-hour workday (but not more than 1 hour at a time); sit for 5 hours in an 8-hour workday (but not more than 1 hour at a time); occasionally climb and stoop; and frequently kneel, crouch, and crawl. (T at 19).

Plaintiff challenges the ALJ's RFC determination. Dr. Balagtas, a consultative examiner, found that Plaintiff could only lift 10 pounds occasionally. (T at 324). In addition, Dr. DiGiovanni, a treating orthopedic specialist, opined that Plaintiff was limited to sedentary work in a July 2007 note. (T at 266). Dr. Kenny, another treating orthopedic specialist, indicated on several occasions that Plaintiff was totally disabled. (T at 284, 287, 289, 292, 294, 305, 309, 312). Plaintiff contends that the ALJ did not properly weigh these medical opinions when rendering his RFC determination.

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362

F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, the ALJ discussed the medical evidence, discounted the assessments of the treating physicians, and rendered a detailed, function-by-function assessment concerning Plaintiff's RFC. (T at 17-22). This Court finds the ALJ's determination supported by substantial evidence, as outlined below.

Plaintiff consulted Dr. Robert Mantica, an orthopedist, for pain management. In a February 2009 progress note, Dr. Mantica assessed that Plaintiff had "some type of soft tissue injury in his back." (T at 387). Dr. Mantica noted "some mild disc degenerative disease and facette joint arthritis in the low back," but concluded that these conditions would not cause the sort of pain alleged by Plaintiff. (T at 387). Dr. Mantica found "no

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

neurologic deficit," muscle spasm, or atrophy. (T at 387). This is consistent with the ALJ's RFC determination.

Plaintiff's MRIs, nerve conduction studies, and x-rays were generally normal, providing further support for the ALJ's assessment. (T at 172, 260-61, 394).

Dr. Kenny, a treating physician, indicated on several occasions between November 2005 and July 2006 that Plaintiff was totally disabled. (T at 284, 287, 289, 292, 294, 305, 309, 312). However, it is well-established that the disability determination is a matter reserved to the Commissioner. 20 C.F.R. § 404.1527(e); SSR 96-5p.

Moreover, Dr. Kenny's assessments were rendered in the context of Plaintiff's claim for workers' compensation benefits. Claims for workers' compensation benefits are governed by different standards that claims for Social Security benefits. See Rosado v. Shalala, 868 F.Supp. 471, 473 (E.D.N.Y.1994) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir.1984) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary."); see also Crow v. Comm'r of Soc. Sec., No.01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (the ALJ was not required to adopt a treating physician's opinion that Plaintiff was "totally" disabled, in part, because "the opinions were rendered in the context of [Plaintiff's] W[orkers'] C[ompensation] claim, which is governed by standards different from the disability standards under the Social Security Act").

Moreover, in September of 2006, after reviewing MRI results (which showed no hernitation or other instability), Dr. Kenny opined that Plaintiff "return to full activities" and was no longer disabled from regular work duties. (T at 282-83).

Dr. Dominic Belmote, an independent medical examiner, diagnosed a "muscular strain of the lumbar spine," with no "clinical findings suggestive of disc pathology." (T at 303). Dr. Belmonte opined that Plaintiff was "medically fit for work with restrictions from repetitive bending and stooping, as well as lifting in excess of 35 pounds." (T at 303). Dr. Belmonte's overall finding was a "mild degree of partial disability . . . ." (T at 303). Dr. Belmonte also suggested a possibility of malingering. Specifically, he described Plaintiff as "histrionic," and noted that Plaintiff was "observed to briskly exit the passenger side of a car in the parking lot" upon arriving for his appointment. (T at 302). Plaintiff dropped an item in the waiting room and "bent over briskly to pick it up but then arose in a [histrionic] manner when he realized he was being observed." (T at 302). Dr. Belmonte also indicated that Plaintiff displayed "theatrics" during the examination. (T at 303).

Dr. Amelita Balagtas, the consultative examiner, assessed that Plaintiff could occasionally lift/carry up to 10 pounds, sit/stand/walk for 1 hour without interruption and up to 5 hours in an 8-hour work day, occasionally climb stairs/ramps/ladders/scaffolds, occasionally stoop, and frequently kneel/crawl/crouch. (T at 325-27). In sum, Dr. Balagtas concluded that Plaintiff "would have slight to moderate limitations in activities that require bending, lifting, prolonged sitting, and prolonged standing and walking." (T at 333).

The ALJ's RFC determination is almost entirely consistent with Dr. Balagtas's opinion. As noted by Plaintiff, the ALJ did not incorporate Dr. Balagtas's assessment that Plaintiff could lift/carry 10 pounds only "occasionally." This does not provide a basis for

reversing the ALJ's determination. Neither Dr. Kenny nor Dr. Mantica indicated any lifting/carrying limitation. (T at 282-83, 387). Dr. Belmonte opined that Plaintiff could lift 35 pounds. (T at 303). Plaintiff testified that he was capable of lifting 10 pounds. (T at 421).

"Conflicts in evidence . . . are for the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. Where, as here, the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. (citing Veino v. Barnhart, 312 F.3d at 586).

For the foregoing reasons, this Court finds no reversible error with regard to the ALJ's RFC determination.

### c. Flawed Hypothetical

A hypothetical given to a vocational expert is appropriate and may be relied upon by the ALJ if the hypothetical fully encompasses the claimant's limitations. Magee v. Astrue, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 799 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." Id.

In this case, the vocational expert (Julie Andrews) testified that an individual with limitations similar to Plaintiff's could work as a small products assembler (unskilled, light job - 513,000 positions nationally, 910 regionally); a preparer (unskilled, sedentary - 105,000/660); and an order clerk (unskilled, sedentary - 174,000/478). (T at 432-33).

Plaintiff argues that the hypothetical proposed by the ALJ to Ms. Andrews was flawed because it did not incorporate Dr. Balagtas's assessment that Plaintiff could only lift/carry 10 pounds occasionally. This argument is without merit. First, as discussed above, the ALJ's decision not to incorporate this particular aspect of Dr. Balagtas's assessment was supported by substantial evidence. Second, the vocational expert identified two jobs as the sedentary work level that Plaintiff could perform. A person limited to only occasionally lifting/carrying 10 pounds would not necessarily be precluded from performing sedentary work, as defined under the applicable Regulations. 20 C.F.R. § 404.1567 (a)("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.").

Accordingly, this Court finds no reversible error with respect to the ALJ's reliance upon the vocational expert's testimony.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and the consultative examiner, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the

Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully Submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:     March 1, 2012

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b)**

of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.
March 1, 2012

*[signature]*

Victor E. Bianchini
United States Magistrate Judge